UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SEAN ADAM ROGERS,

                            Plaintiff,                    Case No. 1:20-cv-263

v.                                                        Honorable Janet T. Neff

D. MACLAREN et al.,

                            Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983.[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the

Court is required to dismiss any prisoner action brought under federal law if the complaint is

frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary

relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C.

§ 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*,

404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

_____

[1] Plaintiff's 53-page original complaint named 28 Defendants from three different facilities operated by the Michigan Department of Corrections.  In an order issued on May 6, 2020 (ECF No. 8), the Court concluded that Plaintiff's claims were misjoined and directed the Clerk to sever the complaint into three separate actions.  The Court also ordered Plaintiff to file an amended complaint in each of the three actions, raising only those allegations applicable to the Defendants in the respective case.  On June 3, 2020, Plaintiff submitted a two-page "amended complaint" in this case (ECF No. 10), to which he attached as exhibits amended complaints for each of the three actions.  Plaintiff's actual amended complaint for the instant case is attached as Exhibit B.  (*See* Ex. B to Am. Compl., ECF No. 10-2, PageID.347-366.)

## Discussion

### I.  Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan.  The events about which he complains, however, occurred at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan.  Plaintiff sues the following KCF Officials:  Warden D. MacLaren; Deputy Warden J. Harwood; Deputy Warden/Administrative Assistant D. Mastew; KCF Resident Unit Manager D. Mansfield; KCF Assistant Resident Unit Manager L. Myers; KCF Hearing Investigator Unknown Vansloten; KCF Grievance Coordinator C. Anderson.  Plaintiff also sues MDOC Assistant Deputy Director L. Rapelje.[2]

In his amended complaint, Plaintiff alleges that, while confined at KCF, he was an unwilling participant in a prisoner strike or riot that occurred on September 10, 2016, during which many prisoners went outside the facility without authorization.  He asserts that he went outside the facility during the incident only after he was threatened with bodily harm by other prisoners.  Plaintiff also claims that Housing Unit Officer Fountain (not a Defendant) told him to go outside during the incident because of safety concerns.

On September 13, 2016, Plaintiff was handcuffed and taken to the KCF gym, where he sat in handcuffs for several hours after Defendant Myers wrote a Class-I misconduct against him for "inciting to riot or strike."  While handcuffed, Plaintiff saw and spoke to Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, and Rapelje, who all responded that the situation was Plaintiff's problem and that he should not have gone outside on the day of the riot.  After being held in the gym for a period of hours, Plaintiff was transferred to the Charles E. Egeler

---

[2] Defendant Rapelje appears to have been formerly employed at KCF.  He is considered a KCF Defendant for purposes of this opinion.

Reception and Guidance Center (RGC).  When he arrived at RGC, he was provided a copy of a Class-I misconduct ticket that had been issued by Defendant Myers.  Plaintiff complains that Defendant Hearing Investigator Vansloten never interviewed Officer Fountain, despite the fact that Plaintiff had informed Vansloten of Fountain's order that Plaintiff go outside and despite the fact that Plaintiff had told Vansloten that he had witnesses who overheard Fountain.

Plaintiff received a video hearing on September 21, 2016, before Hearing Officer Marutiak.  On October 13, 2016, Marutiak issued a lengthy misconduct hearing report, finding Plaintiff guilty of the misconduct charge and sanctioned him to 30 days' toplock (confinement to quarters) and 30 days' loss of privileges.  (Ex. D to Original Compl., ECF No. 1-4, PageID.87-88.)  Plaintiff sought a rehearing.  On January 27, 2017, MDOC Grievance and Hearings Manager Richard Russell denied rehearing.  (*Id.*, PageID.85.)

Plaintiff claims that he filed Grievance No. KCF 161201580028E on September 16, 2016.  On December 15, 2016, Defendant Anderson rejected the grievance at Step I, finding that it was untimely.  Plaintiff appealed the grievance rejection to both Step II and Step III of the grievance process.  Defendant MacLaren denied the grievance at Step II, and MDOC Grievance Manager Richard D. Russell denied the grievance at Step III.

Plaintiff also filed a grievance against Defendant Vansloten on September 21, 2016, complaining that Vansloten had failed to interview witnesses.  Plaintiff never received a grievance identification number.  On October 3, 2016, Plaintiff filed another Step-I grievance, this time against Defendant Anderson, for rejecting or refusing to file Plaintiff's grievance.  Anderson again refused to process the grievance.

Plaintiff complains that the KCF Defendants violated his right to procedural due process by falsely charging him with a misconduct and by inadequately investigating his

responsibility for participating in the riot, leading to his being found guilty of the misconduct charge of inciting a riot. He further contends that he lost his prison job as a result of the misconduct charges. Plaintiff also alleges that Defendant Anderson denied Plaintiff's right to due process by failing to process his grievances.

In addition, Plaintiff alleges that Defendants MacLaren, Harwood, Mastew, Mansfield, and Rapelje transferred him to RGC, although it was "known" that RGC was "unsanitary and unsafe for housing prisoners . . . ." (Am. Compl., ECF No. 10-2, PageID.356.) Plaintiff complains that, upon his arrival at RGC, he was placed in a cell that had not been cleaned for a long time and had a broken toilet and rusty water coming from the faucet. Within a few days, he was moved to a different cell that allegedly was worse than the last, because it also had rusty water. Plaintiff also complains that the showers had black mold and rusty water and that he was required to use the shower without shower shoes on September 14, 2016. Plaintiff contends that Defendants MacLaren, Harwood, Mastew, Mansfield, and Rapelje are therefore responsible for the unsanitary conditions at RGC, which allegedly violated Plaintiff's Eighth Amendment rights.

Further, Plaintiff claims that Defendant Myer's misconduct ticket was retaliatory and that Defendant Vansloten refused to investigate, in retaliation for Plaintiff having verbally complained that he was not a participant in the prisoner strike. Plaintiff also alleges that Defendant Grievance Coordinator Anderson refused to submit his grievances in order to keep Plaintiff from petitioning government, in violation of Plaintiff's rights under the First Amendment. Finally, Plaintiff alleges that Defendants' actions were part of a civil conspiracy to violate his constitutional rights.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## II.      Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III.    Due Process

Plaintiff alleges that Defendants denied him his right to procedural due process under the Fifth and Fourteenth Amendments by charging him with a major misconduct ticket, inadequately investigating the misconduct charge, and finding him guilty of that charge.   In addition, Plaintiff appears to allege that he was denied due process when Defendant Anderson interfered with his filing of grievances and when other Defendants denied those grievances.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

### A.    Misconduct Proceedings

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." According to the misconduct hearing report attached to his complaint, Plaintiff was sanctioned with 30 days' toplock and 30 days' loss of privileges. (Ex. D to Compl., ECF No. 1-4, PageID.87-88.) Plaintiff does not allege that he was sanctioned with segregation, and, according to MDOC policy, segregation would not have been authorized for a prisoner who also received a sanction of toplock. *See* MDOC Policy Directive 03.03.105, Attach. D.

Moreover, even had Plaintiff been sanctioned with confinement in punitive segregation for a brief period, such place would not rise to the level of a protected liberty interest. As the Supreme Court has held, segregation "is the sort of confinement that inmates should

reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Plaintiff fails to demonstrate that he was placed in segregation for any period of time, much less that he suffered the sort of segregation that would implicate a liberty interest under

*Sandin*.  Moreover, if placement in segregation for 30 days does not implicate due process, the lesser sanction of toplock necessarily falls short of the due process threshold.  The same is true for the even lesser sanction of loss of privileges.  If a plaintiff's confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement do not implicate such an interest.

Furthermore, to the extent that Plaintiff alleges that he lost his prison job as a result of the misconduct charge, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs under the Fourteenth Amendment.  *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).

Plaintiff also relies upon prison policies and prison administrative procedures as the source of his right to due process.  (Am. Compl, ECF No. 10-2, PageID.357 (referencing MDOC Policy Directive 03.03.105 and Mich. Admin. R. 791.3310).)  In other words, he suggests that certain prison policies and administrative procedures provide him with state-created rights by

specifying requirements and procedures that prison officials must follow when charging a prisoner with misconduct or when investigating that misconduct.

Plaintiff's reliance is misplaced. As the Supreme Court stated in *Sandin*, using "mandatory language in prisoner regulations" as a source for interests protected by due process "stray[s] from the real concerns undergirding the liberty protected by the Due Process Clause." *Sandin*, 515 U.S. at 484. Prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Id.* at 482. They are not designed "to confer rights on inmates[.]" *Id.* Accordingly, the Court held that state-created interests "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents or prison life." *Id.* (citations omitted). Plaintiff has not alleged that Defendants imposed such a restraint on him. Thus, he does not state a due process claim.

## B. Grievance Process

Plaintiff appears to contend that he was denied his right to procedural due process by Defendant Anderson, who allegedly interfered with the filing of two grievances. He also contends that Defendants Anderson, Mastew, MacLaren, and Russell wrongfully denied his grievance about the transfer to RGC.

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461

U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

## IV.    Right to Petition Government

Plaintiff claims that the Defendants' failure to process or act on his grievances violated Plaintiff's First Amendment right to petition the government for redress.  The Petition Clause of the First Amendment stops the government from generally prohibiting expressions in the form of petitions for redress and from imposing sanctions on one who petitions for redress. *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).  In *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), the Sixth Circuit explained the nature of the right:

> The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  "The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression."  *McDonald v. Smith*, 472 U.S. 479, 482 (1985).  The First Amendment protects Apple's right to petition, but his suit is founded completely on a mistaken reading of that Amendment.  A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views.

*Apple*, 183 F.3d at 479; *see also BPNC, Inc. v. Taft*, 147 F. App'x 525, 531 (6th Cir. 2005) ("The purpose of the Petition Clause . . . is to ensure that citizens may communicate their will through direct petition to the legislature and government officials.").  Thus, Plaintiff has a First Amendment right to file grievances against prison officials, *Herron v. Harrison*, 203 F. 3d 410, 415 (6th Cir. 2000), but the amendment does not require the government to consider, respond to, or grant relief on that grievance.

Plaintiff's allegations reveal that he is trying to expand his right to petition for redress—to complain about prison officials—into a right to compel those officials to listen, or at least to follow their own procedures.  The protections afforded by the right to petition are not that

broad.  It is a right of expression, not a right to process following the expression.  As earlier discussed, "a state has no federal due process obligation to follow all of its own grievance procedures . . . ."  *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003).  An inmate does not have a constitutionally protected interest in a jail or prison grievance procedure or the right to an effective procedure.  *Walker*, 128 F. App'x at 445; *Argue*, 80 F. App'x at 430.  Moreover, section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Plaintiff therefore is not entitled to relief on his First Amendment claim asserting a right to petition government.

## V.     **Eighth Amendment**

Plaintiff alleges that Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, and Rapelje all participated in the decision to transfer Plaintiff to RGC on September 13, 2016, three days after the prison strike.  Plaintiff alleges that Defendants knew or should have known that RGC had unsanitary conditions.  He therefore argues that Defendants' decision to transfer him violated the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey*, 832 F.2d at 954 (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical

care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard has both an objective and a subjective component. Under the objective prong, Plaintiff must allege facts showing that he is "incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To meet the subjective prong, Plaintiff must show that Defendants were both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id.* at 837.

Plaintiff's factual allegations against Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, and Rapelje do not support either prong of the deliberate-indifference standard. Plaintiff's allegations about the conditions of his placement at RGC are insufficient to demonstrate a serious risk to his health or safety. Instead, they demonstrate that he suffered temporary inconveniences and unpleasant conditions for a short period of time.

13

Plaintiff's allegations about the first cell into which he was placed indicate that, at most, he suffered for a few days the minor and temporary unpleasantness of living in a dirty cell, with rusty running water and a non-working toilet.  Allegations about temporary inconveniences, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

A non-flushing toilet does not itself violate the Eighth Amendment.  *See Dellis*, 257 F.3d at 511; *Knop v. Johnson*, 977 F.2d 966, 1013 (6th Cir. 1992).  Plaintiff makes no allegation that he lacked access to a toilet during his time in the cell.  Moreover, rusty water is not necessarily unclean water; it may simply water with a high iron content.  *See Jelenik v. Roth*, No. 93-3316, 1994 WL 447266, at *2 (7th Cir. 1994) (holding that rusty drinking and bathing water did not, in themselves, violate the Eighth Amendment); *Riley-El v. Gondinez*, No. 13 C 5768, at *9 (N.D, Ill. Aug. 29, 2016) (evidence that water was sometimes rusty, yellow, and foul-smelling does not demonstrate an Eighth Amendment injury absent evidence of illness).  Nothing about Plaintiff's allegation suggests that the rusty water posed a health hazard, and he does not complain that received insufficient drinking water or that he suffered any harm from the water.  Whether considered separately or together, Plaintiff's allegations concerning the conditions in his first RGC cell fall short of demonstrating objectively serious conditions that posed a substantial risk of serious harm.

Plaintiff's allegations that Defendants should be liable for Plaintiff's transfer to the second cell are even more attenuated. Nothing suggests that Defendants played any role in Plaintiff's cell placement, much less his placement in the second cell.

Moreover, the conditions of the second cell did not violate the Eighth Amendment. As previously indicated, the presence of rusty water issuing from his cell faucet and the shower does not state an Eighth Amendment claim. And Plaintiff's awareness of black mold on the floor of the shower area does not allege a condition "intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Exposure to black mold that is airborne and can be inhaled into the lungs may be sufficiently serious to give rise to an Eighth Amendment claim, but exposure to black mold through skin contact is a different matter. *Compare Board v. Farnham*, 394 F.3d 469, 486-87 (7th Cir. 2005) (mold in the ventilation system violates Eighth Amendment), *with Causey v. Allison*, No. 1:08CV155-RHW, 2008 WL 4191746, at *1 (S. D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *see also McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate); *Morales v. White*, No. 07-2018, 2008 WL 4584340, at *14 (W.D. Tenn. 2008) (holding that allegations that black mold is located at some place within a housing unit is not sufficient to support an Eighth Amendment claim). The Court is not aware of a serious health risk associated with stepping on black mold with one's bare feet, and Plaintiff has not alleged one.

Here, Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him a health problem or created a substantial risk to his health.

As a consequence, Plaintiff's allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health. *Ivey*, 832 F.2d at 954.

Taken together, Plaintiff's allegations fail to meet the objective prong of the deliberate-indifference standard.

With respect to the subjective prong of the deliberate-indifference standard, Plaintiff alleges no facts that would support a conclusion that Defendants were aware that Plaintiff's placement at RGC would place Plaintiff at a substantial risk of serious harm. Plaintiff merely claims that Defendants knew or should have known that conditions at RGC were unsanitary and that they therefore should not have transferred Plaintiff to RGC. Plaintiff's conclusory allegations suggest nothing more than that Defendants possibly could have been negligent in making the transfer. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence").

But even negligence is unsupported on the facts alleged. Plaintiff does not allege that Defendants had any control over Plaintiff's cell placement at RGC or over the cleanliness of Plaintiff's cell. Moreover, Plaintiff's claim rests entirely on an assertion that Defendants should have known that any placement RGC—a facility to which most new MDOC prisoners are sent for several months—necessarily would violate the Eighth Amendment. The complaint is devoid of factual allegations that would support such a sweeping conclusion.

In sum, Plaintiff's allegations fail to meet either the objective or subjective component of the deliberate-indifference standard. He therefore fails to state an Eighth Amendment claim.

## VI.     Retaliation

Plaintiff contends that Defendants' actions were taken in retaliation for Plaintiff's verbal complaints about being considered one of the prisoner strikers.  He argues that Defendants were motivated by their desire to prevent him from filing a prisoner grievance.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff' claim fails at the first and third steps.  First, Plaintiff fails to allege facts suggesting that he was engaged in protected conduct at the time the misconduct charge was issued. Plaintiff suggests that Defendants filed and pursued the misconduct charges because he intended to file a grievance against them.  An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 299 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance).

17

"Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

Here, however, in describing his conversations with Defendants MacLaren, Harwood, Mastew, Mansfield, Myers, and Rapelje while he was handcuffed in the gym, Plaintiff alleges only that he attempted to explain why he should not be considered to have voluntarily violated the rules by going outside. He does not allege that he told Defendants that he intended to file a grievance. Moreover, by the time he talked to Defendants, he already was being held in handcuffs as a result of his participation in the strike. Thus, the adverse action already was occurring prior to any possible protected conduct. In addition, the misconduct charge was issued that same date that Plaintiff was detained, and Plaintiff received his copy of the charge after he arrived at RGC the following morning. Thus, the charge was issued after Plaintiff went into the yard with other prisoners, at approximately the same time as he was placed in handcuffs. The alleged adverse action already had begun before Plaintiff could have suggested that he wanted to file a grievance.

With respect to the third step of the retaliation standard, Plaintiff completely fails to allege facts suggesting that any Defendant was motivated to charge and convict Plaintiff of misconduct because of Plaintiff's oral complaint about Defendants' decision to place him in handcuffs and charge him with inciting a riot—which indisputably followed Plaintiff's decision to leave the building with other striking prisoners. Instead, his allegation of retaliation is wholly conclusory.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he intended to file a grievance. That is particularly true where, as here, the reason for the misconduct charge was undisputed: Plaintiff left the building with other inmates during a riot or strike. Although Plaintiff claimed that he should not be held liable for his violation of rules because he was threatened by other prisoners and/or ordered by Officer Fountain to go outside, Plaintiff acknowledges that he joined other prisoners in their unauthorized leaving of the building. Under these circumstances, where the obvious reason for Defendants' actions is apparent from the record, Plaintiff's simple declaration of a retaliatory motive does not state a "plausible" claim within the meaning of *Twombly*, 550 U.S. at 557, and *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's retaliation claim against Defendants will be dismissed for failure to state a claim.

## VII.    Conspiracy

Plaintiff contends that all Defendants acted in concert to deprive him of his rights under the Due Process Clause, the First Amendment, and the Eighth Amendment.   A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).   The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez*, 826 F.2d at 1538.

Plaintiff's conspiracy claim fails for multiple reasons.  As discussed elsewhere in this opinion, Plaintiff fails to allege facts demonstrating that any Defendant acted to violate his constitutional rights.  In addition, Plaintiff's complaint contains no factual allegation supporting an inference that Defendants shared an objective to violate Plaintiff's rights.  And, because no constitutional violations occurred, Plaintiff cannot demonstrate that he suffered an injury arising out of any alleged conspiracy.

Indeed, Plaintiff's conspiracy claim is entirely conclusory and speculative.  Plaintiff merely disagrees with Defendants' conclusion that Plaintiff was responsible for participating in a

riot, that his misconduct charge should be sustained, and that he should be transferred to another facility because of his conduct.  Plaintiff's conspiracy claim therefore will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.

Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   June 26, 2020                          /s/ Janet T. Neff
                                                Janet T. Neff
                                                United States District Judge